O

```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF TEXAS
                     HOUSTON DIVISION


DONNA BLAKELEY,                   §
                                  §
            Plaintiff,            §
                                  §
vs.                               §
                                  §   CIVIL ACTION NO. H-03-4901
JAMES K. BOLTINGHOUSE,            §
BARBARA BOLTINGHOUSE, and         §
ALLSTATE TEXAS LLOYDS             §
INSURANCE COMPANY,                §
                                  §
            Defendants.           §
```

MEMORANDUM AND ORDER

Pending are Defendants James K. Boltinghouse's and Barbara Boltinghouse's Motion for Summary Judgment (Document No. 18); Defendant Allstate Texas Lloyds Insurance Company's Motion for Summary Judgment (Document No. 20), and Plaintiff Donna Blakeley's Motion to Remand (Document No. 21). After carefully considering the motions, responses, and the applicable law, the Court concludes as follows:

I.  Background

This action arises from Plaintiff Donna Blakeley's discovery of "toxic" mold in her home. In April, 2001, Plaintiff purchased a house from Defendants James K. Boltinghouse and Barbara Boltinghouse. As part of the overall transaction, the Boltinghouses provided Plaintiff with, *inter alia*, a Seller's Disclosure

Notice (the "Notice").  On the Notice, the Boltinghouses checked several "No" boxes in response to the question of whether they were aware of any previous flooding "Into the Improvements" or "Onto the Property."  *See* Document No. 18 ex. A-2.  Before closing, Plaintiff signed a "Buyer's 'Walk Thru' and Acceptance Form" (the "Acceptance Form").  *See* id. ex. C.  The Acceptance Form recited that the house had been inspected by an inspector of Plaintiff's choice, that Plaintiff had walked through and inspected the house and that she accepted the house in its "present condition."  *See* id.

In the year following the purchase, Plaintiff allegedly fell ill, and suspected that the house was the cause.  According to Plaintiff, further inspection revealed that the house had suffered "prior flooding," that there were undisclosed water leaks, that interior walls had not been properly remediated from the water damage, and that wall spaces contained toxic mold, which had entered the air system and spread throughout the home.  Plaintiff contends that the mold contamination forced her to vacate the premises until they could be remediated, and ultimately reduced the fair market value of the home.

Plaintiff filed suit against the Boltinghouses in Texas state court, alleging violations of the Texas Deceptive Trade Practices Act ("DTPA"), breach of warranty of fitness for a particular purpose, statutory fraud, and quantum meruit.  Plaintiff also asserted claims against her insurer, Defendant Allstate Texas

2

Lloyds Insurance Company ("Allstate"), for breach of contract and violations of the Texas Insurance Code. According to Plaintiff, Allstate wrongfully denied a mold-related claim covered under her insurance policy. Allstate removed the action to federal court on an allegation of diversity jurisdiction, and Allstate and the Boltinghouses moved for summary judgment. Plaintiff, well over a year after removal of the case, moved to remand for lack of subject matter jurisdiction, arguing that the amount in controversy does not exceed $75,000.[1]

II. Discussion

A. Subject Matter Jurisdiction

A defendant may remove to federal court a civil action over which the federal court has diversity jurisdiction. 28 U.S.C. §§ 1332(a), 1441(b). "[W]hen faced with a motion to remand, it is the defendant's burden to establish the existence of federal jurisdiction over the controversy." Winters v. Diamond Shamrock Chemical Co., 149 F.3d 387, 397 (5th Cir. 1998); see Garcia v. Koch Oil Co. of Texas, Inc., 351 F.3d 636, 638 (5th Cir. 2003) ("The party seeking to invoke federal diversity jurisdiction bears the burden of establishing . . . that the amount in controversy exceeds

---

[1] Plaintiff recently stipulated to the dismissal of all claims against Allstate with prejudice. Accordingly, Allstate's Motion for Summary Judgment (Document No. 20) will be denied as moot.

$75,000."). Any doubt as to the propriety of the removal is to be resolved in favor of remand. *See* Acuna v. Brown & Root Inc., 200 F.3d 335, 339 (5th Cir. 2000); Walters v. Grow Group, Inc., 907 F. Supp. 1030, 1032 (S.D. Tex. 1995)(Harmon, J.).

Although Plaintiff's Original Petition does not plead for a specific sum, Plaintiff testified that her damages were limited to $29,000 to repair her home, $10,000 for mental confusion, and attorney's fees, which her lawyer says will not exceed $36,000, for a top-side total of $75,000. *See* Document No. 21, at 2. Jurisdiction is determined, however, as of the time of removal. *See* McGowin v. Manpower Int'l, Inc., 363 F.3d 556, 558 n.1 (5th Cir. 2004). When the suit was filed, Plaintiff's Original Petition (which has never been amended) prayed for treble damages under the DTPA. These additional damages are included when determining the amount in controversy, and easily cause the amount in controversy to exceed the statutory minimum for federal jurisdiction. *See* Dow Agrosciences LLC v. Bates, 332 F.3d 323, 326 (5th Cir. 2003) (including treble damages under DTPA), *vacated on other grounds*, -- S. Ct. --, 2005 WL 957193, at *1 (Apr. 27, 2005); *cf.* St. Paul Reinsurance Co. v. Greenberg, 134 F.3d 1250, 1253 (5th Cir. 1998) (including penalties, punitive damages and statutory damages). Subject matter jurisdiction therefore exists, and Plaintiff's motion for remand will be denied.

B.   <u>Boltinghouses' Motion for Summary Judgment</u>

　　1.   <u>Standard of Review</u>

Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  F<small>ED</small>. R. C<small>IV</small>. P. 56(c).  The moving party must "demonstrate the absence of a genuine issue of material fact."  <u>Celotex Corp. v. Catrett</u>, 106 S. Ct. 2548, 2553 (1986).

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted.  *See* <u>id.</u> at 2553-54.  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice.  *See* <u>Morris v. Covan World Wide Moving, Inc.</u>, 144 F.3d 377, 380 (5th Cir. 1998)(citing <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S. Ct. 2505, 2514-15 (1986)).  "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."  <u>Id.</u>

In considering a motion for summary judgment, the district court must view the evidence through the prism of the substantive evidentiary burden.  *See* <u>Anderson</u>, 106 S. Ct. at 2513-14.  All

5

justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *See* Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. Kelley v. Price Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993) (citing Matsushita, 106 S. Ct. at 1351). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." Id. (citing Anderson, 106 S. Ct. at 2511). Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." Anderson, 106 S. Ct. at 2513.

    2.   Plaintiff's Claims

        a.   DTPA

To prevail under the DTPA, a consumer must show, *inter alia*, that the prohibited acts of which she complains were the "producing cause" of her actual damages. *See* TEX. BUS. & COM. CODE ANN. § 17.50(a) (Vernon 2002); Brittan Communications Int'l Corp. v. Southwestern Bell Tel. Co., 313 F.3d 899, 907 (5th Cir. 2002). Given Plaintiff's execution of the Acceptance Form, the Boltinghouses argue, any wrongful acts on their part cannot, as a matter of law, constitute the "producing cause" of Plaintiff's

6

damages. They point to Dubow v. Dragon, 746 S.W.2d 857 (Tex. App.--Dallas 1988), a case in which the sellers of a house allegedly withheld information or misinformed the buyers about certain problems with the house. The Dubow court held that the buyers' DTPA action failed as a matter of law because the buyers' reliance on their own "careful" inspection of the house's condition "constituted a new and independent basis for the purchase which intervened and superseded the [sellers'] alleged wrongful act." *See* id. at 860.

However, "an independent inspection does not *always* supersede a seller's misrepresentations as a producing cause of damages to the buyer." Fernandez v. Schultz, 15 S.W.3d 648, 649 (Tex. App.--Dallas 2000) (emphasis added). As Fernandez points out, in Dubow the pre-closing inspection had revealed numerous existing and potential problems with the house. *See* id. at 652; Dubow, 746 S.W.2d at 858-59. Based on these findings, the Dubows renegotiated a lower sales price in exchange for a contractual provision taking the house "as is." *See* Fernandez, 15 S.W.3d at 652; Dubow, 746 S.W.2d at 859-60. That provision stated: "'After careful inspection of the house, and with professional opinions, [w]e feel that the house will need extensive on-going maintenance because of the site positioning, foundation and drainage. See attached inspection report. We will take the home as is, WITH ALL CONTINGENCIES REMOVED.'" Dubow, 746 S.W.2d at 859 (quoting

contract modification); *cf.* <u>Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.</u>, 896 S.W.2d 156, 161 (Tex. 1995) ("A valid 'as is' agreement . . . prevents a buyer from holding a seller liable if the thing sold turns out to be worth less than the price paid because it is impossible for the buyer's injury on account of this disparity to have been caused by the seller."). Thus, "the crucial fact in *Dubow* was not the buyers' procurement of an independent inspection; it was their express and exclusive reliance on the 'professional opinions' they received to negotiate the sales contract that resulted in the sale of the house." <u>Fernandez</u>, 15 S.W.3d at 652.

Although the Acceptance Form signed by Plaintiff does recite that both she and an inspector inspected the house, that Plaintiff reviewed the inspection report, and that Plaintiff accepted the house in its "present condition," *see* Document No. 18 ex. C, the Acceptance Form does not itself establish that Plaintiff "relied *solely* on the opinion of [the] inspector in making [her] decision to purchase the house." *See* <u>Fernandez</u>, 15 S.W.3d at 652 (emphasis added). Unlike the "as is" provision in <u>Dubow</u>, the Acceptance Form signed by Plaintiff does not demonstrate her awareness and anticipation of substantial problems with the house in question. To the contrary, the uncontroverted summary judgment evidence is that Plaintiff's pre-closing inspection revealed only some wood rot in a bathroom, not a host of existing and potential problems

comparable to those in Dubow.  *See* Document No. 23, Blakely Aff. In fact, Plaintiff avers that she would not have purchased the home if she had known of the "hidden water and mold damage in the kitchen and water damage in the living room."  Id.  That the inspector may have failed to uncover this alleged damage does not make Plaintiff's execution of the Acceptance Form analogous to the Dubows' renegotiated purchase of their home "as is," which was made with the express anticipation that extensive repairs would be necessary.  *Cf.* Fernandez, 15 S.W.3d at 653 ("Although it may be true that their inspector's failure to discover the termites inside the house was a producing cause of the [buyers'] damages, there nevertheless may be more than one producing cause of damages in a case."); Kessler v. Fanning, 953 S.W.2d 515, 519 (Tex. App.--Fort Worth 1997) (commenting that there may be more than one producing cause of damages with respect to a DTPA claim).  Accordingly, the Boltinghouses' motion for summary judgment on Plaintiff's DTPA claims will be denied.

      b.   Breach of Warranty

    The Boltinghouses move for summary judgment on Plaintiff's claim for breach of warranty of fitness for a particular purpose, a claim evidently made under the Texas Uniform Commercial Code ("Texas UCC"), TEX. BUS. & COM. CODE ANN. § 2.315 (Vernon 1994).  As the Boltinghouses point out, however, the Texas UCC governs only

transactions involving the sale or lease of "goods," and homes are not a "good."  *See* id. § 2.102; Gupta v. Ritter Homes, Inc., 633 S.W.2d 626, 637 (Tex. App.--Houston [14th Dist.] 1982) ("Appellant's assertion that he had a cause of action for implied warranties under the Uniform Commercial Code is unfounded because sales of realty, in this case a used home, are not within the scope of the Code."), *rev'd on other grounds*, 646 S.W.2d 168 (Tex. 1983). Plaintiff offers no response to these arguments, and her breach of warranty claim against the Boltinghouses will therefore be dismissed.

    c.    Statutory Fraud

Plaintiff alleges that the Boltinghouses committed statutory fraud by making false representations of fact for the purpose of inducing her to enter into a contract for purchase of the home. *See* TEX. BUS. & COM. CODE ANN. § 27.01 (Vernon 2002); Burleson State Bank v. Plunkett, 27 S.W.3d 605, 611 (Tex. App.--Waco 2000, pet. denied) ("Section 27.01 provides for a statutory cause of action for fraud in real estate and stock transactions.").  The Boltinghouses contend they are entitled to summary judgment on this claim because "Plaintiff cannot produce any evidence that [the Boltinghouses] made the assertion [(that they were not aware of any previous flooding)] knowing it to be untrue at the time it was made." Document No. 18, at 12.

In response, Plaintiff points out that § 27.01 "does not require proof of knowledge or recklessness as a prerequisite to the recovery of actual damages." Burleson State Bank, 27 S.W.3d at 611 (explaining difference between common law fraud and statutory fraud); see Brush v. Reata Oil and Gas Corp., 984 S.W.2d 720, 726 (Tex. App.--Waco 1998, pet. denied)(same). The representation made by the Boltinghouses in the Notice, however, was *not* that there was in fact no previous flooding, but rather that the Boltinghouses were not *aware* of previous flooding. *See* Document No. 18 ex. A-2; ex. B, at 97-98.[2] Plaintiff presents no competent summary judgment evidence suggesting that the Boltinghouses were in fact aware of previous flooding at the time they signed the Notice--and that their representation was therefore *false*.[3] Thus, the Boltinghouses are entitled to summary judgment on Plaintiff's statutory fraud claim.

---

[2] Plaintiff avers: "The Boltinghouses represented to me, *based on their Seller's Disclosure Notice*, provided to me prior to the purchase, that there was no water damage or mold in the kitchen area or water damage in the living room." Blakely Aff., Document No. 23 ex. C (emphasis added). This statement, however, is nothing more than Plaintiff's own interpretation of the Notice, which itself makes a representation only as to previous flooding of which the Boltinghouses were *aware*.

[3] Plaintiff requested a continuance in part to obtain an affidavit from Jesse Inocencio, who she believes can provide evidence that the Boltinghouses were aware of prior flooding when they signed the Notice. Some additional months have now passed since Plaintiff made her request for more time but she still has not filed an affidavit or other controverting evidence from Inocencio.

     d.    <u>Quantum Meruit</u>

It is uncontroverted that Plaintiff's "quantum meruit" claim is really one for breach of contract. "The elements of a breach of contract claim under Texas law are: 1) the existence of a valid contract; 2) performance or tendered performance by the plaintiff; 3) breach of contract by the defendant; and 4) damages to the plaintiff resulting from the breach." <u>Lewis v. Bank of Am. NA</u>, 343 F.3d 540, 544-45 (5th Cir. 2003). "Whether a party has breached a contract is a question of law for the court, not a question of fact for the jury." <u>Byrd v. Estate of H.G. Nelms</u>, 154 S.W.3d 149, 161 (Tex. App.--Waco 2004).[4]

Plaintiff's Original Petition alleges that the parties "entered into a contract for the purchase and sale of the home"-- and that the Boltinghouses breached the contract "in that the consideration tendered by [the Boltinghouses] failed in whole or in part because the home delivered was not was [sic] of the same quality as purchased." Document No. 1 ex. A ¶ 18. The Bolting- houses argue that this claim fails as a matter of law because Plaintiff has not produced any actual evidence of breach, and has not even identified the particular promise or provision that the

---

[4] More specifically, "'[t]he judge determines what conduct is required of the parties and, insofar as a dispute exists concerning the failure of a party to perform the contract, the judge submits the disputed fact questions to the jury.'" <u>Byrd</u>, 154 S.W.3d at 161 (quoting <u>Lafarge Corp. v. Wolff</u>, 977 S.W.2d 181, 186 (Tex. App.-- Austin 1998, pet. denied)).

Boltinghouses allegedly violated. In response, Plaintiff merely requests "additional time to respond to this portion of [the Boltinghouses'] motion." Document No. 23 ¶ 43. Plaintiff's request is denied, and her unsupported quantum meruit/breach of contract claim against the Boltinghouses will be dismissed.[5]

### III. Order

Based on the foregoing, it is

ORDERED that Plaintiff Donna Blakeley's Motion to Remand to State District Court (Document No. 21) is DENIED. It is further

ORDERED that Defendant James K. Boltinghouse's and Barbara Boltinghouse's Motion for Summary Judgment (Document No. 18) is GRANTED IN PART, and Plaintiff's claims for breach of warranty of fitness for a particular purpose, for statutory fraud, and for quantum meruit/breach of contract are DISMISSED on the merits. Defendants' Motion for Summary Judgment is otherwise DENIED, leaving for trial Plaintiff's DTPA claims. It is further

ORDERED that, pursuant to the stipulation between Plaintiff and Defendant Allstate Texas Lloyds Insurance Company, all of Plaintiff's claims against Defendant Allstate Texas Lloyds Insurance Company are DISMISSED with prejudice, and Defendant

---

[5] Plaintiff's request for leave to amend her Original Petition to add a negligent misrepresentation claim, which is not separately filed, is also DENIED.

Allstate's Motion for Summary Judgment (Document No. 20) is DENIED AS MOOT.

The clerk shall notify all parties and provide them with a true copy of this Order.

SIGNED at Houston, Texas on this __4th__ day of May, 2005.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE